UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOANNE S. PALMORE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-03268-TWP-DML |
| | ) |
| NANCY A. BERRYHILL,[1] Acting Commissioner | ) |
| of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff Joanne S. Palmore ("Palmore") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A. Procedural History**

On September 13, 2013, Palmore filed an application for DIB, alleging a disability onset date of January 1, 2009[2]. (Filing No. 13-2 at 23-25.) Her claim was initially denied on October 18, 2013, and again upon reconsideration on January 16, 2014. *Id.* at 23. Palmore's date of last

---

[1] Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] Palmore later amended her disability onset date to July 27, 2013, which is the day after the unfavorable hearing decision on prior concurrent Title II and Title XVI Supplemental Security Income disability claims. Palmore stated she was not seeking to reopen her prior claim. Thus, the ALJ considered this Title II only claim from July 27, 2013 to December 31, 2013, her date last insured. (Filing No. 13-2 at 23.)

insured was December 31, 2013.  *Id.*  She filed a timely written request for a hearing, which was held on April 17, 2015, before Administrative Law Judge Blanca B. de la Torre (the "ALJ").  *Id.*  On May 26, 2015, the ALJ denied Palmore's application for DIB.  *Id.* at 35.  Following this decision, Palmore requested review by the Appeals Council on July 24, 2015. *Id.* at 2.  On September 30, 2016, the Appeals Council denied her request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  *Id.* at 7.  On December 2, 2016, Palmore filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).  (Filing No. 1 at 1.)

**B.     Factual Background**

Palmore alleges the following impairments:  obesity, asthma, degenerative disc disease of the lumbosacral spine, high blood pressure, anemia, and acid reflux.  (Filing No. 13-2 at 25-26.) The ALJ found that Palmore's high blood pressure, anemia, and acid reflux were not severe impairments, but listed her asthma as a severe impairment.  (Filing No. 13-2 at 28.)  The ALJ also found that her degenerative disc disease did not meet or medically equal the requirements of Listing 1.04 at step three of the sequential evaluation.  Palmore raises one issue as to whether the ALJ's determination regarding her back pain was supported by substantial evidence; therefore, the Court focuses on the issues involving Palmore's degenerative disc disease of the lumbosacral spine.

Palmore was born in 1963 and at the time of her amended alleged disability onset date in 2009, she was 49 years old.  (Filing No. 17 at 4.)  She was 51 years old at the time of the ALJ's decision and she is currently 54 years old.  Palmore graduated from high school.  She had an employment history of working in fast food service and package delivery service. Palmore is 5'2"

tall and in October 2013, Palmore weighed 169.5 pounds with a calculated body mass index (BMI) of 33.10. ([Filing No. 13-2 at 28](#).) A BMI of 30.0 or above reflects obesity. *Id.*

On May 16, 2012, Palmore presented to Mushkbar Khan, M.D. ("Dr. Khan") for a physical disability evaluation. ([Filing No. 13-7 at 85](#).) Palmore reported to Dr. Khan that she was unable to work because she falls often, has back pain and headaches that occur 4-5 times per week. *Id.* She described her lower back pain as sharp muscle spasms that have been present for six years and that rest and Advil relieved the pain. *Id.* In September 2012, Palmore underwent physical therapy and her back pain improved a little. ([Filing No. 13-7 at 57](#).)

On May 23, 2013, a lumbosacral x-ray was unremarkable. *Id.* On April 14, 2013, Dr. Khan noted that a thoracic x-ray showed minimal multilevel degenerative disc disease and minimal anterior spurring at the T6-T10 levels. ([Filing No. 13-7 at 70](#).) In August 2013, neurological findings were normal. *Id.* Dr. Khan performed a lumbar magnetic resonance image (MRI) on July 17, 2014, which showed mild disc bulging, facet hypertrophy with ligamentum flavum hypertrophy, and mild bilateral neural foraminal stenosis at various levels. ([Filing No. 13-7 at 7](#).) The thoracic spine was unremarkable and the spinal cord had a normal signal. *Id.* There was no evidence of severe central canal stenosis or neural foraminal stenosis. *Id.*

Palmore attended a consultative examination with Wallace J. Gasiewicz, M.D. ("Dr. Gasiewicz") on October 11, 2013. ([Filing No. 13-8 at 4](#).) Dr. Gasiewicz reported that Palmore had good range of motion in the cervical, thoracic, and lumbar spine. *Id* at 5. She could climb on and off the examination table, had full strength in all major muscle groups, and had normal reflexes. *Id*. She had normal coordination and could perform normal movements, such as walking, sitting, squatting, bending, hand movements, manipulative movements, and grasping objects. ([Filing No. 13-8 at 6](#).)

Two state agency medical consultants, Dr. David Everetts, M.D. ("Dr. Everetts") and Dr. J.V. Corcoran, M.D. ("Dr. Corcoran"), reviewed Palmore's medical records and specifically considered her degenerative disc disease, but both opined that it was not a severe impairment sufficient to support a decision on her claim. ([Filing No. 13-3 at 5](Filing No. 13-3 at 5), 12.)

## II.   DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold

an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ made the following findings as part of her decision. The ALJ first determined that Palmore met the insured status requirement of the Act for DIB through December 31, 2013. ([Filing No. 13-2 at 25](#).) The ALJ then began the five-step analysis. At step one, the ALJ found that Palmore had not engaged in substantial gainful activity since July 27, 2013, the amended alleged disability onset date. *Id.* At step two, the ALJ found that Palmore had the following severe impairments: obesity, asthma, and degenerative disc disease of the lumbosacral spine. *Id.* At step three, the ALJ concluded that Palmore does not have an impairment or combination of impairments that meets or medically equals Listing 1.04 in 20 C.F.R. Part 404, Subpart P, Appendix 1. ([Filing No. 13-2 at 26-27](#).) The ALJ made this determination based on the opinions of Dr. Everetts and Dr. Corcoran, the state agency medical consultants. *Id.* at 32. Both consultants concluded that Palmore did not have a severe physical impairment that meets or equals the requirements of one of the Listing of Impairments. *Id.*

The ALJ then determined that Palmore had a RFC to perform light work with the following additional limitations:

> [S]he is able to lift, carry, push, and pull twenty pounds occasionally and up to ten pounds frequently. She is able to sit for six hours during an eight-hour workday. She is able to stand for six hours during an eight-hour workday. She is able to walk for six hours during an eight-hour workday. She is able to work on ladders, ropes or scaffolds, or crawl. She is able to climb ramps and stairs occasionally. She is able to kneel, balance, stoop, or crouch frequently. She is unable to tolerate concentrated exposure to extreme cold and to fumes, odors, gases, and other lung irritants.

([Filing No. 13-2 at 28.](#))  At step four, the ALJ determined that considering Palmore's RFC, she was capable of performing her past relevant work as a counter supervisor, cashier, and marker II. ([Filing No. 13-2 at 32.](#))  At step five, the ALJ determined that Palmore was not disabled because there were jobs that existed in significant numbers in the national economy that Palmore could perform, considering her age, education, work experience, and RFC.  ([Filing No. 13-2 at 34.](#))  These jobs included housekeeper, sales attendant, and power screwdriver operator.  *Id.*  Therefore, the ALJ denied Palmore's application for DIB because she was found to not be disabled.  *Id.*

## IV.  **DISCUSSION**

In her request for judicial review, Palmore argues that remand is appropriate because the ALJ's determination that Palmore does not medically equal Listing 1.04 Disorders of the Spine ("Listing 1.04") at step three constituted reversible error because it was not supported by substantial evidence.  Palmore focuses her argument on the standard established in *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004).  ([Filing No. 17 at 19-20.](#))  "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."  *Id.* at 670 (citation omitted).  Palmore argues that the ALJ's written decision does not indicate that she relied on any state agency physician's opinion in evaluating her combination of medical impairments.  She cites to an excerpt of the ALJ's opinion in support of her argument:

7

> I have evaluated the claimant's back impairment using the criteria of Listing 1.04. The claimant lacks the significant and persistent neurological abnormalities that this listing requires. The record does not document motor, reflex, or sensory loss, and weakness resulting in the inability to ambulate effectively. Furthermore, she has not been diagnosed with arachnoiditis. Therefore, I find that her back impairment does not meet or equal listing 1.04.

Filing No. 13-2 at 27.

In response, the Commissioner explains that the ALJ referenced two expert medical opinions that supported her determination at step three that Palmore's back disorder did not meet or equal Listing 1.04. The Commissioner also notes that Palmore failed to meet her burden of proof at step three in rebutting the two state agency physicians' opinions. The Commissioner states that, "The state-agency reviewing physicians, David Everetts, M.D. and J.V. Corcoran, M.D., specifically considered Palmore's degenerative disc disease, but opined that it was not a severe impairment, let alone an impairment of listing-level severity." (Filing No. 18 at 12-13.)

The Commissioner relies on the standard established in *Sullivan v. Zebley*, 493 U.S. 521 (1990). (Filing No. 18 at 8-9.) "Plaintiff had the burden to show that each of the specified medical criteria of a listing were satisfied; an impairment that manifests only some of the criteria, no matter how severely, does not qualify." *Id.* at 530. The Commissioner points out that in order to equal a listing, Palmore was required to present evidence of other findings related to the impairment that were at least of "equal medical significance" to the required criteria. 20 C.F.R. § 404.1526(b)(2). These medical findings are then compared to "closely analogous listed impairments." *Id.* Finally, Palmore had the burden of showing that her impairment satisfied the requirements of the listing for a continuous period of at least twelve months. *Id.* 20 C.F.R. § 404.1526(a).

Under Listing 1.04, Palmore had the burden to show that she had a disorder of the spine, such as a herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture. 20 C.F.R. Pt. 404, Subpt. P, App.

8

1, § 1.04. This showing is evidenced by a disorder of the spine resulting in compromise of a nerve root or the spinal cord of twelve months duration and satisfying Paragraph A, B, or C criteria as follows:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> OR
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> OR
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. § 404.1526(a). An ALJ's decision will stand so long as she minimally articulates her reasons for consideration of medical evidence. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (citation omitted).

Upon review of the ALJ's decision and the record, the Court determines that the ALJ's decision was supported by substantial evidence. The ALJ minimally articulated the reasons for her determination that Palmore did not have a severe impairment that meets or medically equals the requirements of one of the listed impairments, and those reasons were supported by substantial evidence. Palmore did not meet her burden of proof at step three. The ALJ noted that Palmore did not allege that she has a condition of listing level severity, but the ALJ still evaluated all impairments using the appropriate section of the Listing of Impairments. The Court focuses

specifically on Palmore's degenerative disc disorder because that is the impairment which she argues the ALJ materially erred. (Filing No. 13-2 at 26.)

The ALJ consulted various medical opinions in concluding that Palmore's back impairment did not meet or equal Listing 1.04. The ALJ noted that Palmore lacked the significant and persistent neurological abnormalities that Listing 1.04 requires. The ALJ gave medium weight to the opinions of Dr. Everetts, and Dr. Corcoran. Dr. Everetts determined at the initial level on October 17, 2013, that Palmore had a non-severe impairment that did not result in work-related functional limitations. (Filing No. 13-2 at 32.)

The ALJ specifically noted the opinion of Dr. Gasiewicz regarding his consultative examination. (Filing No. 13-2 at 27.) On October 11, 2013, Dr. Gasiewicz observed that Palmore's posture and gait were normal, her range of motion was full throughout her body, and straight leg raises were normal from the seated and supine positions. (Filing No. 13-2 at 27.) Palmore was able to climb on and off the examination table. *Id.* Her muscle strength and tone were normal and her reflexes were normal and symmetric. *Id.* Similarly, Palmore's Romberg[3] test was normal, her coordination was normal, and she did not have ataxia or unsteadiness. *Id.* Palmore's grip strength was full (5/5), and her fine finger skills were normal. *Id.* Dr. Gasiewicz also observed that Palmore had no weakness when she walked to her car. *Id.*

Dr. Everetts considered Dr. Gasiewicz's opinion that Palmore is able to perform normal movements like walking, sitting, squatting, bending, hand movements, manipulative movements with hands and feet, able to grasp objects, and able to get on and off the table without assistance. Dr. Everetts found Dr. Gasiewicz's opinion to be consistent with the evidence in the record,

---

[3] A Romberg test is used in an examination of neurological function for determining balance.

including a May 2013 x-ray of the lumbar spine that showed no abnormalities. (Filing No. 13-3 at 5).

Palmore's treating physician, Dr. Khan, noted that Palmore complained of back pain, but x-rays showed only mild degenerative disc disease. (Filing No. 13-7 at 70.) Further, Palmore's physical examination showed only mild thoracic and minimal restriction in range of motion. *Id.* Dr. Khan recommended that Palmore take naproxen twice a day and a muscle relaxant on bad days. *Id.* At the reconsideration level on January 16, 2014, Dr. Corcoran agreed that Palmore did not have a severe physical impairment. (Filing No. 13-2 at 32.) The evidence supports the ALJ's conclusion that Palmore's back impairment does not meet or equal Listing 1.04 because the ALJ cited numerous medical opinions that noted mild disc bulging which did not affect her ability to ambulate effectively. (Filing No. 13-2 at 27.) Palmore's medical record failed to meet Paragraph A, B, or C criteria and the ALJ cited the medical evidence that was contrary to the criteria.

Palmore's degenerative disc disease does not meet or medically equal the requirements of Listing 1.04. After a review of the ALJ's decision and the evidence, the Court determines the ALJ's decision is supported by substantial evidence, her reasoning is sufficiently explained, and her conclusions logically follow the evidence and her rationale. The ALJ properly considered the medical evidence before her, including the medical opinion of Palmore's treating physician. Thus, Palmore's argument for remand on this basis is unavailing.

## V. CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Palmore's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 11/14/2017

*[signature: Tanya Walton Pratt]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov

Norman Lamont Reed
THE LAW OFFICE OF NORMAN REED
reedsmithlaw@aol.com